**Milton L. and Beatrice Barnes v. State of Vermont, et al.**

[403 A.2d 684]

No. 55-79

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed May 2, 1979

*Jane Carol Glendinning-Johnson,* Vermont Legal Aid, Inc., Burlington, for amicus curiae Ad Hoc Citizens Committee.

*Witten & Carter, P.C.,* Bennington, and *Conley & Foote,* Middlebury, for Plaintiffs.

*Langrock Sperry Parker & Stahl,* Middlebury, for amicus curiae Town of Middlebury.

*M. Jerome Diamond,* Attorney General, and *Robert C. Schwartz,* Assistant Attorney General, Montpelier, for Defendants.

Barney, C.J. This is a declaratory judgment action seeking to halt reconstruction of Court Street in Middlebury. The claim is that the procedure for holding public hearings in connection with the project was defective. The specific contention is that the law requires separate corridor and design public hearings, rather than the single, combined, corridor-design hearing actually held. The lower court denied relief and allowed the project to go forward. It has been enjoined here pending disposition of this appeal. For a full understanding of the nature and background of the issues presented, recourse to material in the transcript and exhibits, as well as the findings, is helpful.

Court Street runs southerly from a small park called Court Square, which functions as a traffic circle, and leads U.S. Route 7 south out of Middlebury. The proposed project involves $7/10$ of a mile of that street starting at Court Square. About half of the reconstruction at the north end is in the Middlebury Village Historic District. The street is tree-lined, with buildings of historic interest predominating at the northerly end, including the Addison County Courthouse itself. The street is characterized as mixed residential-commercial, with most of the residences older homes set well back from the street. The commercial units are small, and intermixed with residences.

Court Street itself is a two-lane street of twenty-foot width and seven-foot bituminous treated shoulders, last improved in 1934 except for a partial resurfacing in 1957. It occupies an eighty-foot right-of-way, with the sidewalks just inside the right-of-way boundaries on each side. The pavement is in poor structural condition, with travel lanes of ten feet, which are substandard for the use made of the street. The shoulders

are of varying widths, with grass encroachment. The area within the right-of-way, at various points, contains trees, shrubbery and grass treated as extensions of lawn. There are no provisions for turning vehicles at any of the five side street intersections within the project, including two that serve as access to an elementary school and a union high school, respectively.

Sometime in 1970 the selectmen turned to the state for assistance in reconstructing Court Street. The issue was again raised in December, 1974. As a result, proceedings culminating in the present project were commenced.

Since the proposed reconstruction involves federal funds, several aspects of federal law are involved as well as the associated federal regulations. These laws and regulations are addressed to concerns for the environment, for highway safety, for historic preservation, for economic growth and other matters.

For the purposes of this proceeding, the significant federal statutes are 23 U.S.C. § 128(a), as amended, which requires state highway departments seeking funding for federal-aid highway projects to hold public hearings; the National Environmental Policy Act of 1969, § 102(2)(C), 42 U.S.C. § 4332(2)(C), which requires the preparation of an environmental impact statement in connection with all "major Federal actions significantly affecting the quality of the human environment"; and the Department of Transportation Act of 1966, as amended, § 4(f), 49 U.S.C. § 1653(f), forbidding the Secretary of Transportation from approving any project that requires the use of "any land from an historic site of national, State, or local significance as . . . determined by [the Federal, State, or local officials having jurisdiction thereof] unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such . . . historic site resulting from such use."

Under the authority of 23 Code of Federal Regulations (C.F.R.) § 795.5, which implements 23 U.S.C. § 128, each state highway agency is directed to put together an Action Plan under which federal and federal-aid highway projects are to be developed from initial system planning through de-

sign. 23 C.F.R. § 790.2 provides that a State Action Plan's provisions concerning public hearing procedures will replace the public hearing requirements established by 23 C.F.R. § 790.5 once the Plan is approved by the Federal Highway Administration. Vermont's plan received the requisite federal approval. Thus the central issue in the case is whether Vermont's State Action Plan required the holding of separate design and corridor hearings in the circumstances of this case. Perhaps it should be noted here that those procedural requirements have vitality even though the hearings themselves are intended to inform the public and give persons opportunity to express their views, rather than to adjudicate rights and liabilities in the usual sense.

Under the National Environmental Policy Act, *supra,* it is also required that the proposed project be reviewed for environmental concerns. This is reflected in the Action Plan by a call, in certain cases, for an Environmental Impact Statement, or, if the environmental effects of the proposed project are not significant, a so-called Negative Declaration. See 23 C.F.R. §§ 771.9, 771.10 and 771.11.

Additionally, where properties of historic significance or designated historic districts are involved, under 49 U.S.C. § 1653(f) and 23 U.S.C. § 138, a determination called a "Section 4(f) Statement" is required before such properties can be used. This brings in the State Historic Preservation Officer under the Agency of Development and Community Affairs, and the Advisory Council on Historic Preservation of the federal government. The State Action Plan makes provision for the consideration of all of these interests, and is, therefore, an amalgam of several varying federal statutory and regulatory requirements.

With this background in mind, we turn to the proposed reconstruction of Court Street. Once the project got under way, many adjustments and changes were made with respect to design, with particular emphasis on historic preservation and environmental impact. The proposal now under contract provides for replacement of the two ten-foot travel lanes with twelve-foot lanes and the improvement of the shoulder areas to a uniform width of eight feet of contrasting pavement. The

total highway width will be forty feet and will be edged by six-inch curbing. Existing sidewalks will be retained.

No land will be condemned within the historic district. One filling station will be removed near the southerly end of the project to improve the access to the union high school. The proposal requires the removal of four trees, none of them within the historic district. Except for a short area at the north end of the project, parking, which now occurs in random fashion, would be prohibited on both sides of the improved Court Street. No change of grade or alignment is involved, and no driveways will be eliminated.

The federal government, in the early stages, urged a much larger project, with a road fifty-two feet wide, based on the heavy average daily traffic count of 12,000 vehicles. Thereafter, having in view the possibility that a by-pass of the Village of Middlebury might be built, the Federal Highway Administration indicated it would accept a curb to curb width of forty-four feet. In April of 1976 state funding for the reconstruction of Court Street was approved by the Vermont Legislature. However, the Advisory Council on Historic Preservation objected to the forty-four foot width, and the Federal Highway Administration suggested a forty foot compromise.

On March 31, 1977, the Advisory Council had a public hearing. A consensus came out of the meeting that Court Street should be improved, but to the least width consistent with the needs of traffic. An agreement was then executed for a forty foot width street improvement, with parking eliminated to reduce traffic hazard. The Federal Highway Administration took the position that the forty foot width was the least it could approve consistent with acceptable design criteria.

Matters then moved on to the next public hearing, ostensibly held in conformity with the State Action Plan. This took place on April 18, 1978. The present plaintiffs appeared and objected that the Action Plan required separate, rather than combined, corridor and design hearings. In August, 1978, the plaintiffs brought this declaratory judgment action. It was heard in late December, and the findings and judgment order expeditiously issued in early January, 1979.

As stated in their complaint, a principal concern of the plaintiffs in this action is to require a town meeting at which

the voters of Middlebury have a chance to express their approval or disapproval of the project. This option was part of legislation that added 19 V.S.A. § 1811 to the law. Its effective date was April 12, 1978, but it excluded from its application, among others, projects that had been the subject of a corridor or corridor/design hearing prior to May 1, 1978. It is the position of the plaintiffs that, if the April 18, 1978, hearing did not fulfill the call of the Action Plan, there has been no hearing that can operate to exempt this project from public vote.

The attack of the plaintiffs on the April 18, 1978, proceeding is concededly technical. It is their position that the State Action Plan requires separate corridor and design hearings for any "major action," a term of art. The so-called Negative Declaration, prepared to comply with the National Environmental Policy Act and regulations thereunder, including regulations now embodied in the State Action Plan, states that this project must be classed as a major action. They argue that the characterization of the project as "major" indicates a binding election to go forward with separate hearings, rendering the April 18 combined proceeding a nullity.

The so-called "Negative Declaration," an exhibit in the case, contains the following statement:

> The subject project, which comprises the modernization of an existing facility by widening less than a single lane width and adding shoulders, without right-of-way acquisition, is of the type which would ordinarily be classed as a non-major action. However, the involvement with the Middlebury Historic District, a property which is protected under Section 4(f) of the Department of Transportation Act and Section 106 of the Historic Preservation Act, dictates that it be classed as a major action.

This is the characterization of the project as a "major" action upon which the plaintiffs rely. The question which is before this Court is whether or not that statement requires the two-hearing result contended for by the plaintiffs.

The first inquiry must be to determine whether or not the State Action Plan requires the two-hearing procedure in every case that has the "major" label assigned to it. The State con-

tends that it does not. Among other things it points to a flow-chart that shows alternative procedures for major actions. But this Court must first examine the substantive requirements of the Plan with a view to reviewing that Plan's expression of the proper procedures before we can properly turn to the charts, since they are not expressly made a substantive part of the Plan.

The defendants do not contest the designation, but simply argue that the label "major" does not inevitably require two separate hearings. They support their position variously. One argument points to the section of Chapter V, the "Abbreviated Steps" portion, which says that:

> The Planning Engineer with the concurrance [sic] of the Federal Highway Administration is responsible for determining which projects should be developed under abbreviated procedures. This determination is reassessed periodically to assure that such projects should continue to be developed under abbreviated procedures.

It is their argument that this authority does not, in its language, have specific or limited application to either "major" or "minor" actions, and, therefore, the Planning Engineer can properly apply abbreviated procedures to a "major" action.

There is, in the Action Plan itself, a definition section. In it, "Major Action" is defined as follows:

> *Major Action*—An action of superior, large and considerable importance, involving substantial planning, time, resources or expenditures.

It is to be noted that that definition does not incorporate in it any particular hearing consequence.

There is a separate and distinct section of the State Action Plan that establishes the factors which determine the type of public hearings required in a given instance. It makes no reference to "major" or "non-major" actions. Instead, it reads, in pertinent part:

> Both a corridor public hearing and a design public hearing must be held, or an opportunity afforded for those hearings, with respect to each federal-aid highway project that:

1) is on new location; or
2) would have a substantially different social, economic or environmental effect; or
3) would essentially change the layout or function of connecting roads or streets.

However, with respect to secondary road programs, two hearings are not required on a project covered by 1) or 2) unless it will carry an average of 750 vehicles a day in the year following its completion.

A single combined corridor and highway design public hearing must be held, or the opportunity for such a hearing afforded, on all other projects before route location approval, except as provided in the following paragraph.

The remaining provisions are understood to have no application to the present project. The language above quoted is taken without substantial change from 23 C.F.R. § 790.5, the federal public hearing regulations superseded when the State Action Plan was approved.

The lower court made a finding that the project in question here did not have any of the characteristics that would call for separate corridor and design hearings under the State Action Plan. Testimony in the case demonstrated that the project is a reconstruction of an existing road in place, without grade change, not only within the present right-of-way but also within the present sidewalks. The road will continue to be a two-lane highway, now with twelve-foot travel lanes and eight-foot shoulders. This is sufficient support for this finding.

The plaintiffs' argument rests principally on Chapter V of the State Action Plan, titled "Abbreviated Steps." That chapter begins as follows:

The amount of detail to which assessment of environmental effect, development of alternates, and public involvement is to be carried, will depend on the significance of a particular project. The steps outlined in the body of this Action Plan are addressed to Federal-aid Projects, which are classed as major actions.

These abbreviated steps are applicable to Federal-aid Projects which: are classified as Non-Major Actions. The

following are examples of projects which are likely to be classed Non-Major Actions:

The examples which follow the material above quoted play no part in the plaintiffs' contentions. The plaintiffs simply take the position that this section means that classification as a "major action" requires the two-hearing procedure, since the so-called "abbreviated steps" are stated to be applicable to projects classified "non-major" actions.

An examination of the testimony immediately discloses that it was the assumption of the responsible highway department official that the necessity to deal with the Middlebury Historic District, and therefore consult with the Advisory Council on Historic Preservation and the Vermont State Historic Preservation Officer, required that the project have a "major" designation. The appropriate procedures are prescribed by 36 C.F.R. Part 800 and culminate in the "Section 4(f) Statement." See 49 U.S.C. § 1653(f) and 23 U.S.C. § 138.

In this Court the plaintiffs make reference to what they characterize the pertinent parts of 23 C.F.R. § 771.9, here quoted:

(c) A major action which is an FHWA action *will require either* an EIS *or* negative declaration. A nonmajor action which is an FHWA action will not require an EIS or a negative declaration. (Emphasis added.)

(d) Major actions are those of superior, large and considerable importance . . . . The following are examples of types of actions which are ordinarily considered to be major actions:

. . . .

(7) A project that warrants a 'major action' classification because it has been given national recognition by Congress even though it is not included in the above list. Such a project would be one that falls under section 4(f) of the DOT Act or section 106 of the National Historic Preservation Act.

As can be seen, the definition of "major" as it appears in the State Action Plan is drawn from this section. It is also subsection (7), just quoted, which accounts for the designation of "major" in this case, since the presence of the Middle-

bury Historic District brings it into play under the appropriate federal law. 49 U.S.C. § 1653(f) and 16 U.S.C. §§ 470–470m.

However, none of this, in spite of strenuous efforts of the parties to make it appear so, definitively settles the one hearing/two hearing controversy. What does come through quite clearly from the State Action Plan is that the concerns with respect to whether a project is labelled "major" or "non-major" are quite distinct from those that determine the kind of hearing involved.

The designation of "major" or "non-major" has to do, in principal part, with environmental concerns as expressed in the National Environmental Policy Act (NEPA). See 23 C.F.R. § 771.9. The "major" designation is directed at the need for either an Environmental Impact Statement (EIS) or its alternative, a Negative Declaration. The concern for the significance of the action taken into Chapter V, "Abbreviated Steps," is derived from NEPA considerations, and is subject, by the terms of the State Action Plan itself and the pertinent federal regulations to judgmental evaluation by concerned officials.

In contrast, the hearing section of the State Action Plan is designed to implement different federal requirements. The statutory basis is 23 U.S.C. § 128. From it comes 23 C.F.R. § 790.5 with its specific criteria for the various kinds of hearings. It is the content of these regulations that is reproduced, using substantially identical language, in the State Action Plan.

The hearing provisions are mandatory. Unless the proposed project involves: (1) a new location; (2) substantially different social, economic or environmental effects; or (3) changes in the layout or function of connecting roads, a combined hearing is sufficient under the State Action Plan, without reference to whether the action was determined to be "major" or "non-major" under another part of the Plan. This provision of the State Action Plan permitting a single combined corridor and design hearing is consistent with the federal regulation it replaces. The public participation called for in the applicable regulations was provided and there is no error.

Since the pending project is already under contract and delay represents substantial expense for each day of nonperformance, the mandate will be expedited.

*Judgment affirmed and injunction dissolved. Mandate to issue forthwith. V.R.A.P. 41(a).*